United States District Court
Southern District of Texas
**ENTERED**
September 24, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| JPMORGAN CHASE BANK, N.A., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL NO. 1:26-cv-006 |
| | § | |
| ROOF PRO SERVICES LLC, *et al.,* | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION TO GRANT DEFAULT JUDGMENT AND AWARD FEES**

## I. Synopsis

Defendant Roof Pro Services LLC ("Roof Pro") obtained a commercial loan from Plaintiff JPMorgan Chase Bank, N. A. ("Chase"), with Defendants Lee R. Olivares and Nora I. Olivares serving as guarantors. Plaintiff Chase brings claims of breach of contract, alleging that Defendants have failed to make payments as required under the Term Note, Credit Agreement, and Continuing Guaranty agreements. Although duly summoned and served, Defendants have failed to answer Plaintiff Chase's Complaint. For the reasons discussed below, Chase is entitled to default judgment against Roof Pro, Lee R. Olivares, and Nora I. Olivares.

## II. Jurisdiction

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 based on the diverse citizenship of the parties and the matter in controversy exceeding the required amount. *See* Dkt. No. 1 at 1. Venue is appropriate in this division as Defendant Roof Pro's place of business is in Cameron County, Texas. *Id.*; 28 U.S.C. §1391(b)(1); 28 U.S.C. §1391(c)(2).

Pursuant 28 U.S.C. § 636(b)(1), this case was referred to the undersigned United States Magistrate Judge to conduct all pretrial proceedings. Dkt. No. 6.

## III. Background

In their Complaint, Plaintiff Chase alleges that in 2023, Defendant Roof Pro executed a Term Note and Credit Agreement as a borrower. Dkt No. 1-1; Dkt. No. 1-2. Defendant Lee R. Olivares and Nora I. Olivares both served as guarantors for the Contract as lines of credit. *Id.* The Term Note and Credit Agreement are collectively referred to as the "Contract."

The Contract concerns a loan executed for a "business, commercial, agricultural, or similar commercial enterprise purpose." Dkt No. 1-1 at 1. The Original Term Note outlines Defendant Roof Pro's promise to pay Plaintiff Chase $100,000, or the amount advanced and outstanding, plus interest on the unpaid principal balance, with a possible additional charge per annum upon default. *Id.* While the Small Business Administration ("SBA") guaranteed a portion of the loan memorized in the Contract, Plaintiff Chase states that Defendant Roof Pro Services is still responsible for the amount Chase received from the SBA. Dkt. No. 20-1 at 2 ¶ 7.

On January 8, 2026, Plaintiff Chase filed their Complaint, alleging Defendants have failed to abide by the terms of the Contract by failing and refusing to make payments. Dkt. No. 1 at 3. They claimed damages as to the principal amount of $74,504.57, interest in the amount of $5,118.43, late charges of $455.00, for a total amount of $80,078.00, with interest continuing to accrue at a default rate of 16.00% per annum from December 18, 2025, until the date of judgment.[1] *Id.*

On February 2, 2026, Plaintiff Chase Bank filed three Motions to Substitute Service, one motion per each named Defendant. *See* Dkt. Nos. 9, 10, and 11. The Court granted these Motions on February 10, 2026, allowing the Plaintiff to serve each Defendant

---

[1] In their Motion for Default Judgement, Plaintiff revises their claim to damages as being:

(a) "The principal balance of $74,504.57 due on the Contract as of April 17, 2026;
(b) Accrued interest in the amount of $7,462.88 as of April 17, 2026;
(c) Late fees and costs in the amount of $819.00 as of April 17, 2026;
(d) Reasonable and necessary attorney's fees of $1,225.00 through judgment;
(e) Costs of court;
(f) Post-judgment interest at the rate of ___% from the date of judgment until paid in full."

Dkt. No. 20-14 at 2.

by doing all of the following: (1) serving a copy of the summons, the complaint, and this Order on the residence of 18779 KILBOURN RD., HARLINGEN, TX 78550 by either attaching it securely to the front door or by leaving it with someone at least 16 years old at the residence; and (2) mailing the summons and complaint to 18779 KILBOURN RD., HARLINGEN, TX 78550 by both certified mail, return receipt requested, and regular mail. *See* Dkt. No. 12. On February 25 and 26, 2026, Plaintiff Chase returned service of summons executed on Defendants. *See* Dkt. Nos. 13, 14, 15, and 16. Defendants' answer was due March 12, 2026.

On April 8, 2026, Plaintiff Chase filed a Request for Entry of Default after no answer was filed by Defendants. Dkt. No. 17. On April 9, 2026, the Court directed the District Clerk's Office to make an entry of default against Defendants pursuant to Rule 55 of the Federal Rules of Civil Procedure. Dkt. No. 18. On the same day, the Clerk of Court entered default against Defendants Roof Pro, Lee R. Olivares, and Nora I. Olivares. Dkt. No. 19.

On May 12, 2026, Plaintiff Chase filed a Motion for Default Judgment. Dkt. No. 20. In their Motion, Plaintiff requests final judgment including the principal balance of the Contract, accrued interest, late fees, reasonable attorneys' fees, court costs, and post-judgment interest. Dkt. No. 20-14 at 1–2. Plaintiff provides copies of the Term Note, Credit Agreement, Continuing Guaranty agreements, Account Transaction History, Non-Military Affidavits, and an Affidavit on Attorney's Fees. *See generally* Dkt. No. 20 Attachments 1–13.

## IV. Standard of Review for Default Judgment under Fed. R. Civ. P. 55(b)

Obtaining an entry of default judgment is a three-step process: (1) default by the Defendant; (2) entry of default by the Clerk's Office; and (3) entry of a default judgment. *Bieler v. HP Debt Exch., LLC*, 2013 WL 3283722, at *2 (N.D. Tex. June 28, 2013) (citing *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996)). Defendants Roof Pro, Lee R. Olivares, and Nora I. Olivares defaulted by failing to answer or otherwise defend against Plaintiff Chase's claim. *See generally* Dkt. No. 18. Entry of default against

Defendants has been made by the Clerk. Dkt. No. 19. The only remaining question is whether the third step—entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n,* 874 F.2d 274, 276 (5th Cir. 1989). Nevertheless, default judgment determinations are left to the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977). In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. First, the Court must determine if default judgment is appropriate under the circumstances, considering six factors:

> (1) whether material issues of fact are at issue;
> (2) whether there has been substantial prejudice;
> (3) whether grounds for default are clearly established;
> (4) whether default was caused by good faith mistake or excusable neglect;
> (5) the harshness of the default judgment; and
> (6) whether the court would feel obligated to set aside a default on the defendant's motion.

*Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Second, Courts must "assess the merits of the plaintiff's claims and find a sufficient basis in the pleadings for the judgment." *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *2 (S.D. Tex. Jan. 11, 2018) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). By defaulting, a defendant is deemed to admit all "well-pleaded allegations" in the complaint but is "not held to admit facts that are not well-pleaded or to admit conclusions of law." *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu*, 515 F.2d at 1206). To determine whether an allegation is "well-pleaded," the Fifth Circuit looks to Federal Rule of Civil Procedure 8, which governs the sufficiency of a complaint. *Id.* at 498. Under that standard, "[d]etailed factual allegations are not required, but the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Id.*

"If the court determines that default judgment should be granted, the court must also determine the appropriate amount of damages." *People's United Equipment Finance Corp. v. Northern Yankee*, LLC, No. H-17-3528, 2018 WL 4334056, at *2 (S.D. Tex. June 6, 2018). Generally, a hearing is needed to make a monetary damage assessment. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). It is the plaintiff's burden to provide an evidentiary basis for the damages sought. *BBVA USA v. Hall*, No. 5:19-CV-99, 2020 WL 9814212 at *1 (S.D. Tex. December 18, 2020).

## V. Analysis

### A. The *Lindsey* factors apply in favor of a default judgment to Chase.

In this case, the Court finds that the six *Lindsey* factors, outlined above, weigh in favor of granting default judgment. First, there are no material issues of fact in dispute as Defendants Roof Pro, Lee R. Olivares, and Nora I. Olivares have failed to file any responsive pleadings in this case. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). Second, there is substantial prejudice to Plaintiff Chase's interest in its rights resulting from Defendants' failure to respond. *See Insurance Co. of the West v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *1 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). Third, the grounds for default have been clearly established due to Defendants' failure to respond. *See Guerrero,* 2018 WL 375391 at *2. Fourth, there is no evidence before the Court indicating that Defendants' silence is the result of a good-faith mistake or excusable neglect. *Id.* (citing *Lindsey*, 161 F.3d at 893). Fifth, "the harshness of default judgment is mitigated as time passes without an appearance or filing from an opposing party." *Id.* In this case, nine months have passed without an appearance or filing from any of the Defendants. Sixth, this Court is unaware of any facts which would give rise to good cause to set aside the default if challenged by Defendants. *Id.*; *see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (Fifth Circuit upheld district court's grant of default judgment after defendant failed to respond to summons within forty days).

Defendants Roof Pro, Lee R. Olivares, and Nora I. Olivares were properly served in accordance with the Court's grant of substitution of service. *See* Dkt. Nos. 12, 13, 14, 15, and 16. Additionally, the grounds for default judgment are clearly established under the *Lindsey* factors. Thus, the Court recommends that a default judgment be granted in favor of Plaintiff Chase.

**B. Chase is entitled to judgment on their pleadings.**

Where, as here, a default has been entered under Rule 55 of the Federal Rules of Civil Procedure, "the factual allegations of the complaint are taken as true." *Pathway Senior Living LLC v. Pathways Senior Living LLC*, No. 3:15-CV-02607-M, 2016 WL 1059536, at *2 (N.D. Tex. Mar. 17, 2016). However, "a defendant's default does not in itself warrant the court in entering a default judgment;" rather, "[t]here must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206.

**i. The claims against Roof Pro Services LLC are sufficiently plead.**

After reviewing Plaintiff's Complaint (Dkt. No. 1) and Motion for Default Judgment (Dkt. No. 20), the Court finds that Plaintiff Chase has pleaded a sufficient basis to award default judgment on their causes of action.

To succeed on a breach of contract claim under Texas law, a plaintiff must show: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 499–500 (5th Cir. 2018) (quoting *Smith Intern., Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

First, Plaintiff has sufficiently plead the existence of a valid contract between Plaintiff and all Defendants. Plaintiff Chase states that, on March 7, 2023, Defendant Roof Pro Services as a borrower executed a Term Note and Credit Agreement. Dkt No. 1-1; Dkt. No. 1-2. Defendants Lee R. Olivares and Nora I. Olivares both served as guarantors for the Contract as lines of credit. *Id.* Plaintiff Chase brings a notarized affidavit of Veronica Escobar, a Special Credits Analyst, who outlines the loan history and account transaction

history between the parties. Dkt. Nos. 20-1; 20-6. Chase also brings copies of the Term Note, Credit Agreement, Continuing Guaranty of Lee R. Olivares, and Continuing Guaranty of Nora I. Olivares. Dkt. Nos. 20 Attachments 2–5.

As to performance and breach, Plaintiff alleges they have performed their duties under the Contract by extending funds to Defendants. Dkt. No. 1 at 2–3. Plaintiff further alleges Defendants defaulted under the terms of the Contract by failing and refusing to make payments. Dkt. No. 1 at 3. A guaranty's breach of contract is based on "proof of (1) the existence and ownership of the guaranty contract, (2) the terms of the underlying contract by the holder (3) the occurrence of the conditions upon which liability is based, and (4) the failure or refusal to perform the promise by the guarantor." *Bank OZK v. AMAC LLC*, 2024 WL 1340578, at *4 (E.D.Tex., 2024) (quoting *Lee v. Martin Marietta Materials S.W., Ltd.*, 141 S.W.3d 719, 720 (Tex. App.—San Antonio 2004, no pet.)). Plaintiff has proven the existence and ownership of guaranty contracts for Defendants Lee R. Olivares and Nora I. Olivares (Dkt. Nos. 20-4 and 20-5); the terms of the underlying Note (Dkt. Nos. 20-2 and 203), and Defendants' breach (Dkt. No 20-6). As of the filing of Plaintiff's Motion for Default Judgment, Defendants have failed to remit payment to Plaintiff for the amount due. Dkt. No. 20. Plaintiff has established their performance and Defendants' breach of the obligations under the Contract.

Finally, Plaintiff alleges it has been harmed by Defendants' breach of the Contract, specifically alleging the below damages in their Motion for Default Judgment:

(a) "The principal balance of $74,504.57 due on the Contract as of April 17, 2026;
(b) Accrued interest in the amount of $7,462.88 as of April 17, 2026;
(c) Late fees and costs in the amount of $819.00 as of April 17, 2026;
(d) Reasonable and necessary attorney's fees of $1,225.00 through judgment;
(e) Costs of court;
(f) Post-judgment interest at the rate of ___% from the date of judgment until paid in full."

*See* Dkt. No. 20-14 at 2.

Accordingly, Plaintiff Chase has shown that each of the four requisite elements to establish breach of contract has been met; thus, a sufficient basis in the pleadings exists to enter a default judgment. *See Aguacates Seleccionados JBR USA, LLC v. Bucks Fresh Produce, LLC*, No. 7:19-CV-338, 2020 WL 4883898, at *5 (S.D. Tex. Aug. 20, 2020) (finding the plaintiff is entitled to a default judgment on its breach of contract claim); *Bank of N.Y. Mellon v. Century Loan Servicing, LLC*, No. 4:17-CV-00646-ALM-CAN, 2019 WL 4728335, at *6 (E.D. Tex. July 18, 2019) (concluding the plaintiff set forth a sufficient basis in its pleading for each element of a breach of contract claim), report and recommendation adopted, No. 4:17-CV-646, 2019 WL 4722480 (E.D. Tex. Sept. 26, 2019).

**ii. Chase has proved their damages.**

Having determined that a default judgment is appropriate, the only remaining issue for the Court to address relates to an award of damages. *See Pope v. United States*, 323 U.S. 1, 12 (1944) (After granting default judgment, it is the district court's duty "to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

District courts have "wide latitude" in determining whether an evidentiary hearing should be conducted when awarding damages after a default judgment. *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). When the amount sought can be demonstrated "by detailed affidavits establishing the necessary facts," an evidentiary hearing would serve no useful purpose. *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979). Here, the Court finds that the pleadings and supporting documents on file are sufficient to calculate the amount of damages.

Additionally, an evidentiary hearing was held before this Court on September 16, 2026, in which Plaintiff Chase proffered to the Court the damages amount as outlined and recommended below.

### iii. Chase is entitled to the outstanding balance of their Note.

Plaintiff Chase seeks default judgment which entitles them to the outstanding balance of the Contract, pre-judgment interest, and post-judgment interest from the date of judgment until paid in full. Dkt. No. 20-14 at 1-2. Chase claims the principal amount of the loan secured by Defendants as $74,504.57. *Id.* This amount is supported by the Term Note and Credit Agreement. Dkt. Nos. 20-2; 20-3. Plaintiff Chase also brings a notarized affidavit of Veronica Escobar, a Special Credits Analyst, who outlines the loan history and account transaction history between the parties. Dkt. Nos. 20-1; 20-6.

While the SBA guaranteed a portion of the loan memorized in the Contract, Plaintiff Chase states that Defendant Roof Pro Services is still responsible for the amount Chase received from the SBA. Dkt. No. 20-1. The Continuing Guaranty agreements provided by Chase further collaborates that this was the understanding of the Parties. Dkt. No. 20-5 at 6.[2]

Thus, Chase is entitled to the outstanding balance of $74,504.57.

### iv. Chase is entitled to pre-judgment interest of 16.00%.

Under 28 U.S.C. § 1961(a), in diversity cases, pre-judgment interest is calculated under state law. *See Bos. Old Colony Ins. v. Tiner Assocs.*, 288 F.3d 222, 234 (5th Cir. 2002). In Texas, breach of contract cases are governed by Texas common law, which "allows prejudgment interest to accrue at the same rate as post-judgment interest." *Int'l Turbine Servs., Inc. v. VASP Brazilian Airlines*, 278 F.3d 494, 500 (5th Cir. 2002). The Texas Finance Code specifies post-judgment interest accrues "at a rate equal to the lesser of: (1) the rate specified in the contract ... or (2) 18 percent a year." Tex. Fin. Code § 304.002.

Here, the Term Note clearly outlines Defendant Roof Pro's promise to pay Plaintiff Chase $100,000, or the advanced and outstanding amount, plus interest on the unpaid

[2] "Guarantor acknowledges and agrees that Guarantor's liability under this Guaranty with respect to an SBA Loan will continue even for amounts paid by SBA to Bank under an SBA guarantee. Any agreement with Bank under which SBA guarantees an SBA Loan does not create any third party rights or benefits for Borrower or Guarantor and, if SBA pays Bank under that agreement, *SBA or Bank may then seek recovery from Guarantor of amounts paid by SBA*. SBA is not a co-guarantor with Guarantor and Guarantor has no right of contribution from SBA." Dkt. No. 20-5 at 6.

principal balance, with a possible additional charge per annum upon default. Dkt. No. 20-2 at 1. The Note further specifies that interest on the unpaid principal balance will be "computed on the basis of the actual number of days elapsed in a year of 365 or 366 days, as the case may be, at the rate of 13.000% Per Annum (the 'Note Rate')." *Id.* However, upon any default under the Note, the Bank may increase the rate by 3.00% per annum above the Note Rate. *Id.* Plaintiff Chase also includes in their Motion for Default Judgment the loan's account transaction history, which includes a column for the accumulated interest. Dkt. No. 20-6. Chase requests pre-judgment interest in the amount of $7,462.88 as of April 17, 2026, at a default rate of 16.00% per annum. *Compare* Dkt. No. 1 at 6 with Dkt. No. 20-14 at 1.

Pre-judgment interest starts accruing on (a) the 180th day after the date the defendant receives written notice of a claim or (b) the date the suit was filed, whichever is earlier, and stops accruing on the day preceding the date of Final Judgment. *See Mason v. Mason*, No. 07-12-007-CV, 2014 WL 199649, at *7, (Tex. App.-Amarillo, Jan. 13, 2014); Tex Fin. Code. § 304.104. Chase filed their Complaint on January 8, 2026. Dkt. No. 1. Defendants received notice of the claim via alternative service of process on February 25 and 26, 2026. Dkt. Nos. 14, 15, 16. Chase may then recover pre-judgment interest from January 8, 2026 (the date of the filing of the suit is the earliest date in this case), until the date of final judgment, calculated at the rate of 16.00% per annum.

However, "A default judgment must not differ in kind from, or exceed in amount, *what is demanded in the pleadings*." Fed. R. Civ. P. 54(c) (emphasis added). Here, Chase stipulates to pre-judgment interest in the amount of $7,462.88 as of April 17, 2026, at a default rate of 16.00% per annum. Dkt. No. 20-14 at 1. This amount coincides with the amount listed in the loan's account transaction history. Dkt. No. 20-6. The Court, therefore, finds Chase entitled to prejudgment interest in the amount of $7,462.88 as of April 17, 2026, at a default rate of 16.00% per annum.

### v. Chase is entitled to post-judgment interest at the statutory rate.

Under 28 U.S.C. § 1961(a), in diversity cases, "[t]he post-judgment interest rate for judgments in federal courts is governed by federal statute, 28 U.S.C. § 1961(a)." *Celtic Marine Corp. v. James C. Just. Cos., Inc.*, 593 F. App'x. 300, 305 (5th Cir. 2014) (quotation omitted). 28 U.S.C. § 1961(a) sets post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding." Parties can contract around the statutory rate, but to do so, the contract "must us[e] clear, unambiguous, and unequivocal language." *Celtic*, 593 F. App'x. at 305**.**

Here, the Contract does not explicitly reference post-judgment interest. While the contract is clear as to pre-judgment interest, as discussed above, it is unclear as to interest post-judgment. The Note specifies that the Borrower promises to pay the outstanding balance, "plus interest on the unpaid principal balance computed on the basis of the actual number of days elapsed in a year of 365 or 366 days, as the case may be, at the rate of 13.000% Per Annum (the 'Note Rate') and at the rate of 3.00% Per Annum above the Note Rate, at the Bank's option, upon the occurrence of any default under this Note." Dkt. No. 20-2. However, this provision does not make it "clear, unambiguous, and unequivocal" that it refers to the post-judgment interest rate.[3] Therefore, this Court recommends the District Judge consult the Federal Reserve Statistical Release table of selected interest rates to determine the appropriate post-judgment interest rate for this action depending on when judgment is entered.

### vi. The Court recommends the granting of attorneys' fees and court costs.

As this case is in federal court based on diversity jurisdiction, Texas law is applicable to the award of attorney fees. *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th

[3] The Fifth Circuit has found that parties do not "clearly, unambiguously, and unequivocally mean [] to refer to post-judgment interest except where they have expressly referred to post-judgment interest." *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 459 (5th Cir. 2013); *See also Hymel v. UNC, Inc.*, 994 F.2d 260, 266 (5th Cir. 1993) (Language in the Note providing an interest rate "both before and after judgment" permissible).

Cir. 2002). Under Texas law, a party may recover attorney fees only when allowed by statute or contract. *1/2 Price Checks Cashed v. United Auto. Ins. Co.*, 344 S.W.3d 378, 382 (Tex. 2011) (citing *Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Corp.,* 299 S.W.3d 106, 120 (Tex. 2009). The Texas Civil Practice and Remedies Code provides that "[a] person may recover reasonable attorney's fees from an individual or organization ..., in addition to the amount of a valid claim and costs, if the claim is for ... an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). "[A]n award of reasonable attorney's fees is mandatory under § 38.001 if the plaintiff recovers damages for a breach of contract claim." *Theriot v. Transamerica Life Ins. Co.*, 354 F. Supp. 3d 713, 719 (E.D. Tex. 2017).

In their Motion for Default Judgment, Plaintiff Chase seeks "reasonable and necessary attorney's fees" of $1,225.00. Dkt. No. 20-14 at 2. Chase also submits an Affidavit on Attorney's Fees. Dkt. No. 20-12.

"Although courts should consider several factors when awarding attorney fees, a short hand version of these considerations is that the trial court may award those fees that are 'reasonable and necessary' for the prosecution of the suit." *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). "The trial court may also consider the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." *Weaver v. Jamar*, 383 S.W.3d 805, 814 (Tex. App.–Houston [14th Dist.] 2012, no pet.). In Texas, uncontroverted attorney testimony or an affidavit testifying to the attorney qualifications, reasonableness of the fees, and the basis for the opinion may be sufficient to support an award of attorney fees. *See Clary Corp. v. Smith*, 949 S.W.2d 452, 469 (Tex. App.–Fort Worth 1997, no writ). "The court, as a trier of fact, may award attorney fees as a matter of law in such circumstances, especially when the opposing party has the means and opportunity of disproving the testimony or evidence and fails to do so." *Ragsdale v. Progressive Voters League*, 801 S.W.2d 880, 882 (Tex. 1990).

Here, Plaintiff Chase submits an affidavit from their counsel, as well as a table of billable hours. *See* Dkt. No. 20-12; Dkt. No. 20-13. Chase further requests for attorneys' fees an amount less than the amount reflected in their table. *Compare* No. 20-12 with Dkt. No. 20-13. Under Texas law, Chase's evidence is "legally sufficient" for an award of attorney fees. *See In re Estate of Tyner*, 292 S.W.3d 179, 184 (Tex. App–Tyler 2009, no pet.) ("attorney swore under oath that he is a licensed attorney, he is familiar with the reasonable and necessary attorney fees charged for appeals in civil actions such as this case, he has personal knowledge of the services rendered to [the party] in this matter, and those services were reasonable, necessary, and customary. Thus, [the party's] attorney affidavit sufficiently established reasonable attorney fees and is legally sufficient to support the trial court's award of attorney fees."). The amount of attorney fees Chase seeks is reasonable as a matter of law.

Furthermore, because this is a breach of contract claim, Texas law allows the contract to govern the recovery of costs. *See Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 445, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987)); *Peak Tech. Servs. v. Land & Sea Eng'g, LLC*, No. H-10-1568, 2012 U.S. Dist. LEXIS 109628 (S.D. Tex. Aug. 6, 2012). Here, the Contract contemplates payment of attorneys' fees in enforcing its provisions. Dkt. No. 20-4 at 1 ("The Guarantor will not only pay the Liabilities, but will also reimburse the Bank for any fees, charges, costs and expenses, including reasonable attorneys' fees (including fees and expenses of counsel for the Bank that are employees of the Bank or its affiliates) and court costs…"). Accordingly, this Court recommends that Plaintiff Chase be awarded attorney fees and court costs in addition to the total debt owed by Defendants.

## VI. Recommendation

For the reasons stated above, this Court recommends Plaintiff Chase's Motion seeking Default Judgment, Dkt. No. 20, be **GRANTED**. This Court further recommends a finding that:

(1) Plaintiff Chase and Defendants Roof Pro Services, Lee R. Olivares and Nora I. Olivares entered into a valid and enforceable contract involving a commercial loan;
(2) Defendants defaulted on the loan;
(3) Chase is entitled to the outstanding balance on the Contract in the amount of $74,504.57 due on the Contract as of April 17, 2026;
(4) Chase is entitled to pre-judgment interest accrued in the amount of $7,462.88 as of April 17, 2026;
(5) Chase is entitled to late fees and costs in the amount of $819.00 as of April 17, 2026;
(6) Chase is entitled to reasonable and necessary attorney fees of $1,225.00 through judgment;
(7) Chase is entitled to post-judgment interest in the amount outlined in the Federal Reserve Statistical Release table;
(8) Reasonable expenses to enforce and collect on the judgement, including additional attorney fees; and
(9) All writs and process necessary for enforcement and collection of the judgement.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge. 28 U.S.C. § 636(b)(1). A party filing objections must specifically identify the factual or legal findings to which objections are being made. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). This Report and Recommendation shall serve as notice of procedural defaults, and the objection period shall serve as opportunity to respond to these defects. *Alexander v. Trump*, 753 F. App'x 201, 208 (5th Cir. 2018).

If any party fails to timely object to any factual or legal findings in this Report and Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

The Clerk of Court is **DIRECTED** to send a copy of this Report and Recommendation to the Defendants Roof Pro Services, Lee R. Olivares and Nora I. Olivares via regular and certified at the address of service, which is 18779 KILBOURN RD., HARLINGEN, TX 78550.

Signed on September 24, 2026.

Karen Betancourt
United States Magistrate Judge